Lawrence AZBELL, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 26024.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 24, 2004.

Craig A. Johnston, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Kennedy, Assistant Attorney General, Jefferson City, MO, for respondent.

JAMES K. PREWITT, Judge.

In July 2002, Lawrence Azbell ("Movant") was charged by information with forcible rape, in violation of § 566.030, RSMo 2000, and forcible sodomy, in violation of § 566.060, stemming from an incident in which he entered T.A.'s apartment, first threatening harm to her boyfriend and one-month-old baby if she did not perform oral sex on him, and then having sexual intercourse with T.A. without her consent. On August 26, 2002, Movant entered a guilty plea on reduced charges, both class C felonies, of sexual assault, in violation of § 566.040, RSMo 2000, and deviate sexual assault, in violation of § 566.070, RSMo 2000. On October 25, 2002, he was sentenced to concurrent sentences of seven years' imprisonment on the two counts. This appeal follows the denial of Movant's Rule 24.035 motion for post-conviction relief without an evidentiary hearing.

## Background

Prior to the sentencing date, the court received two handwritten letters from Movant. The first was filed on September 30, 2002, and reads as follows. Please note that the letter appears as it was written, without correction or indication of spelling errors, or insertion of missing punctuation.

I am been thretend by inmates and I have sent my attorney Kenton Hall sined wittness statements staten this is in fact happen I was told by jail Capton Glin that Mr. Glin did not want me in his jail and Mr. Glin was calling the U.S. Marshils to take me back to Terra Haute IN. I am on a 180 day write on case # 302cf1659 if returned the state would lose the right to get me back. I am been denied food by jail emploies I do want to eat All this is over a hit on my life by prison gang members and the hit has went out to all gang members in the US. I started been thretend last mounth and told gards and my attorney Kenton Hall. No action has been taken and the threts grow daily I ask to be wrecked seprit from two inmates that are in p.c. and was thretend to be sent back to prison. I am allso been denied two meds for mental illness and need to be hospitalised because I am seen spirits and Mr. Hall and Kathleen Faddis is awair sence last week this Faddis wants to know why a phyc evaluation has not been done I can't say. I know Judge Lubke in Appleton WI said Im not compitant to stand trial with out been on my meds well I have not been on my meds for a long time

I was last regulated at Winibego County Mental Helth in WI. I am seen the spirits of my first wife and my dad and mom can someone help me I can't talk to no one over here I don't trust them I don't know the date day or why I'm here or how

The second letter was filed on October 2, 2002, and is set out below. As with the

previous letter, we present it here as it was written.

> I want to change my plea to not gitty by reason of mental illness a court of the law has ordered with a mentle hospital I am not compitant to stand trial with out been on my meds. I have not been on my meds and am been refused my meds and mental health treatment by Greene Co. jail a full evaluation was done by Winabego Co. Mental Helth for Alagamie Co. Westconson. I am been misstreated at the county jail by gards becaus my illness Mr. Kenton Hall has sined statement by other inmates as to me been threten can I be housed at a non predjust jail I was left passed out on 9–27 for sevrial hours my cellie tryed to get me medical attincon not one gard or med teck ever came to see me I have yet not been seen by medical and I am been refused to see a capton I have allso been taken out of protetive cousidy and put in genrial pop. seg. Even that I have not broke no rules I do hope you all can help me Im very sick and don't feel good at all I am hopen you can get the Judge to order me to a hospital for some help. I am seen spirits haven real bad headakes and passen out and I can't even get a asprin let a lone real medical help

> Thank you

At the sentencing hearing, the judge referenced that "we had a negotiated plea agreement that I deferred ruling on until I had a chance to review the PSI [pre-sentence investigation]." The court further noted that, based on the pre-sentence investigation, it was "willing to accept and be bound by that written plea agreement." That plea agreement called for two concurrent seven-year sentences.

The court then asked to hear from the State and Mr. Hall, Movant's plea counsel, on the issue. Counsel commented as follows:

Your Honor. I'd like to address some references in the PSI. The PSI writer indicates that [Movant] was not honest with her or candid about his past drug use, his involvement in the present offense, and in several other areas.

Your Honor, [Movant] wants me to point out to the Court, and I have verified through my own investigation, that he has been evaluated for mental competency in the past in relation to Federal and State charges, the state being Wisconsin. And as a result of those interactions with the psychiatrist and psychologist, he was prescribed lithium and Zoloft and I believe Prevacid for depression, anxiety-related issues. While he's been in the Greene County Jail he has not been able to take that medication. He's been off that medication, and he explains to me that that accounts for why he gave false information to the PSI writer. When he was not on his meds, he doesn't think clearly, and his mind doesn't operate in a rational way as it does when he is on his medication.

Now, I understand since we provided—I provided the records that I was able to gather to him in the jail he has presented those to the jail personnel, medical personnel, and he has now been prescribed the medications and today he feels much more comfortable. He had indicated a desire to perhaps withdraw his plea and that again, Judge, was stated when he was not on his medications. He indicates to me today he does not desire to withdraw his plea of guilty.

Following further commentary from Counsel regarding the length of sentence, the judge noted, "I'm glad you brought up the issues about the medications because, [Movant], I did get your correspondence each day about the Zoloft and the things that you weren't on. How long has it been since those have been represcribed for

you?" Movant indicated that he had been back on the medications about four days. In response to the court's question as to how he was feeling and functioning on that day, Movant stated, "Oh, much better, Your Honor."

The exchange continued.

[Court]: Okay. Because that does give me some perspective on your—what you might have said to the PSI writer and I did want to make sure your plea was voluntary. I know you told me it was at the time.

[Movant]: At that time, Your Honor, I didn't really realize what was even going on. I was just really out of it without those medicines.

[Court]: Okay. Well, let me address—first of all, anything else you want to say that [Counsel] hasn't covered on your behalf before I give you some of my thoughts and make a decision on this?

[Movant]: Well, Your Honor, I've been incarcerated already for 16 months, and I've lost a great deal while I was incarcerated. And I've really took a look at my life, and I want to change my life for the better, Your Honor. And I'm willing to comply with anything that the Court would see fit to improve my life. I don't feel that prison would be an improvement to anyone's life because the people that's—that you associate with in there. I feel I need some serious counseling and maybe some drug and alcohol help. That's about all I've got to say, Your Honor.

The court made some additional comments and then asked if either the State or Counsel had anything else to say on the matter, and then if Counsel was aware of "any legal reason ... why the Court should not pronounce sentence at this time." Counsel replied that he was not, and the court stated that the sentence would be as indicated in the written nego-tiated plea agreement, which was two concurrent seven-year prison terms.

The court informed Movant of his rights under Rule 24.035, after which the judge asked about Counsel's representation of Movant.

[Court]: Okay. The other thing we need to talk about is [Counsel's] services. I know in some of your letters you were disappointed with him, didn't think he met with you enough, and now's the time that you need to talk to me about any of those concerns that you have about [Counsel's] performance.

[Movant]: Right now I'm just—I just don't know what to say, Your Honor. I was under the impression when I signed the plea agreement I was getting probation.

[Court]: Okay.

[Movant]: That's what I was under the assumption. I wasn't on my medication.

[Court]: Okay.

[Movant]: I probably wouldn't have signed the plea agreement.

[Court]: Okay. Now that's the sort of thing that you said in your PSI that I'm starting to question you about, because are you telling me today that [Counsel] told you you'd get probation if you pled guilty?

[Movant]: At that time I wasn't on my medicine. I don't know what they were saying, Your Honor.

[Court]: Okay. Well, I remember our conversation, and I can tell you that I'm always very careful not to let anybody plead guilty that doesn't—that I don't think they know what they're doing, and anybody's promised them something different, because I asked you, you know, has anybody told you I'd put you on probation, given you that impression. What you told me at that time was no,

and now you're telling me that somebody did tell you that. Is that what you're saying?

[Movant]: No. I'm saying I'm not sure what they were saying.

[Court]: Okay. And I asked you what kind of medications you were taking or weren't taking and if you had any history of being on medication. Do you remember those questions?

[Movant]: Not really.

[Court]: Okay. Well, I'll tell you what I remember is that I always check into that, and I make sure that you're in a good frame of mind. You answered my questions appropriately. You tell me you're ok, and you want to proceed. And that's what you did then. So, now looking back on it, you're trying to tell me something different, that you weren't okay, and you should have told me that. Am I summarizing correctly what your position is?

[Movant]: Yes.

. . . .

[Court]: There was a plea agreement that you had signed and we went over, and I followed that plea agreement in determining our sentence today. Do you understand that?

[Movant]: Yes.

[Court]: Okay. Anything else that you want to tell me either about [Counsel's] services or about the state of mind you tell me now you were in back when I took your plea?

[Movant]: What effect would it have? I don't understand what effect it would have.... The only problem I have with [Counsel] was this, I told his private investigator several times that I'd been hospitalized and needed these medications, and he would not come to see me. And he would not—he didn't get the—he didn't send after the records.

The PSI lady had them before he did, and I had to write myself, as you'll see on the front cover of the facts if you got a copy, to get [Counsel] those records myself.

[Court]: Okay. Anything else that I need to know about that situation?

[Movant]: No.

[Court]: I don't mean to cut you off, so if there's anything else you'd like to say either about the issue of how you felt at the time you pled or [Counsel's] services, now's the time to tell me.

[Movant]: Like I say, at the time I pled I didn't really know what I was doing. I was just saying yes. But I guess it's too late from what [Counsel] tells me.

[Court]: Well, I don't know. I mean that's one of the things that I asked him about and I asked you about as to whether you had second thoughts about withdrawing your plea, and what I'm suspicious of is that before you knew what was going to happen, you said, oh, no, it was fine and now that you know there's a result you don't like, you're changing your mind on me and saying oh, wait a minute. There was a problem.

[Movant]: No, because if I'd understood what was going on it was right in the plea agreement. What I signed. . . . . If I'd knowed I was signing for any prison time I wouldn't have took the plea. Because I got witnesses I can call in. A lady did say it was unfair, Your Honor.

[Court]: Okay. All right. The Court has sworn the Defendant and advised him of his rights to proceed under Rule 24.035. He's also testified as to his assistance of counsel in this case. I find no probable cause to believe that he's received ineffective assistance of counsel. I also am still convinced that his

plea was freely, voluntarily, and intelligently made, and I think [Movant] has a problem with the truth.

In December 2002, Movant filed a *pro se* motion pursuant to Rule 24.035, and an amended motion requesting an evidentiary hearing was filed on October 7, 2003. On January 5, 2004, the motion court issued its findings of fact and conclusions of law, and entered judgment denying relief without an evidentiary hearing.

### Discussion

Movant raises three points on appeal. Additional facts necessary to the disposition of the case are included below as we address each of Movant's points. The general standard of review for all three points is as follows.

Appellate review of a motion court's denial of postconviction relief is limited to determining whether the facts and conclusions of the motion court are clearly erroneous. *Hill v. State*, 50 S.W.3d 922, 924 (Mo.App.2001). The findings and conclusions are clearly erroneous only if a review of the record leaves this court with a definite and firm impression that a mistake has been made. *Id.*

For Movant to be entitled to an evidentiary hearing, (1) he must allege facts and not conclusions, which, if true, would warrant relief; (2) the allegations must not be refuted by the record; and (3) the matters of which he complains must have resulted in prejudice to his defense. *Ketcherside v. State*, 842 S.W.2d 182, 183 (Mo.App.1992). If it is shown conclusively by the motion and record that Movant is not entitled to relief, a hearing shall not be held. *Id.*

*Point I—Effect of denial of psychotropic medications on guilty plea*

In his first point, Movant argues that the motion court clearly erred in denying an evidentiary hearing on the claim in his amended motion in which Movant alleged that his guilty plea was entered unknowingly, unintelligently, involuntarily, and without understanding because he had been denied his psychotropic medications during the time surrounding his guilty plea. According to Movant, without the benefit of the medications, he did not understand the nature and consequences of entering a guilty plea and, had he been receiving his medications at the time, he would not have pled guilty.

In addressing this claim in its findings of facts and conclusions of law, the motion court, which was the same court and judge that handled Movant's plea and sentencing, noted, "Whether or not [Movant] had not been properly medicated at the time of his plea, he was given the opportunity to withdraw his plea at the time of sentencing and elected not to do so." Further, according to the motion court, the amended motion contained no allegations that Movant "was suffering from any mental handicap related to his medications at the time of his sentencing."

Above, we detailed numerous exchanges involving Movant at sentencing. As indicated, the same judge conducted the plea hearing and asked questions of Movant regarding the voluntariness of his plea. We outline some of those exchanges below.

[Court]: All right. [Movant], you are now charged on Count I with the Class C felony of sexual assault, and in Count II with the Class C felony of deviant sexual assault. Is that your understanding?

[Movant]: Yes, sir.

[Court]: Are those the charges you want to plead guilty to?

[Movant]: Yes, sir.

. . . .

[Court]: Do you have a G.E.D.?

[Movant]: No, sir, but I was working on one in the federal system before I filed the 180–day writ, and since I've came into Greene County I try to educate myself the best I can through the books that they offer here at Greene County.

[Court]: Okay. Let me ask you this. How much difficulty do you have either reading, writing, or understanding English?

[Movant]: None whatsoever, Your Honor.

[Court]: Okay. As far as your physical health goes, how is that?

[Movant]: Not in too good a physical shape, Your Honor.

[Court]: Are you taking any narcotics or any medication for that?

[Movant]: Yes, Your Honor. I'm taking medication. I have heart trouble, cholesterol trouble, and also acid reflux disease, you know, things of that nature.

[Court]: Okay. Are any of those medications making you sick right now or interfering with your ability to think at all?

[Movant]: No, sir.

[Court]: All right. Do you have a history of any mental or psychological problems?

[Movant]: No, sir.

. . . .

[Court]: Everything put together physically and mentally at the moment, do you feel fit, clearheaded, and ready to proceed?

[Movant]: Yes, sir, I do.

[Court]: Okay. Now, has [Counsel] represented you throughout this case?

[Movant]: Yes, sir, he has.

[Court]: Have you gone over with him any defenses you might have and given him the information he needed to help defend your case?

[Movant]: Could you repeat that, sir?

[Court]: Sure can. Have you had a chance to talk with him about any defenses you might have to these charges and go over the case with you?

[Movant]: Yes, sir, I have.

[Court]: Have you also talked with him about whether to go to trial or plead guilty?

[Movant]: Yes, sir, I have and I feel it the best interest to plead guilty.

. . . .

[Court]: Now, unless I say no to this plea agreement, once you give up your right to trial, it's going to be gone and you can't get it back. Do you understand that?

[Movant]: Yes, sir.

[Court]: You also won't be able to file an appeal of your conviction if you plead guilty. Do you know what that means?

[Movant]: Yes, sir.

[Court]: You also will not be able to make any complaints that you shouldn't have been arrested or certain evidence shouldn't come in. All of your pretrial motions are waived, and you don't have a right to have any of those either made or ruled. Do you understand that?

[Movant]: Yes, sir.

[Court]: Anything about these rights you're unsure about?

[Movant]: No, sir.

[Court]: Still want to give up those rights and plead guilty?

[Movant]: Yes, sir.

. . . .

[Court]: Do you understand the possible punishment range [one day to one year in the Greene County Jail or one year to seven years in the Department

of Corrections and/or a fine of up to $5,000 for each count]?

[Movant]: Yes, sir, I do.

. . . .

[Court]: Okay. [Movant], were you able to hear what the Prosecutor said happened?

[Movant]: Yes, sir.

[Court]: Do you have any disagreement with what he said?

[Movant]: No, sir.

[Court]: Is that what took place?

[Movant]: Yes.

[Court]. Okay. [Counsel], do you believe the State has sufficient evidence to make a submissible case on each count?

[Movant]: I do, Your Honor.[1]

[Court]: All right. The plea agreement, [Movant], I've initialled [sic] it, dated, and label that Court's Exhibit 1. Is that your signature on the document?

[Movant]: Yes, sir, it is.

[Court]: Were you able to read and understand what this says?

[Movant]: Yes, sir.

. . . .

[Court]: If I were to follow the agreement, you would receive seven years in the Department of Corrections on each of the Counts I and II. Those counts would run concurrently with each other, and also I don't think it says but I assume any other sentences you may have. Is that true?

[Prosecutor]: That is correct, Your Honor.

[Court]: You'd also—the State would oppose any granting of probation. If you were given probation you'd be required to complete MOSOP treatment, register as a sex offender pursuant to

Section 589.400. Also pay court costs and a $46 civil judgment for the Crime Victim's Compensation Fund. That's my understanding of the agreement. Is that the same understanding you have?

[Movant]: Yes, sir, it is.

[Court]: Has anybody promised you something different than what I just read to get you to plead guilty?

[Movant]: No, sir.

[Court]: Has anybody promised you I'd put you on probation if you pled guilty?

[Movant]: No, sir.

. . . .

[Court]: Are you pleading guilty to these charges because you are, in fact, guilty?

[Movant]: Yes, sir.

[Court]: Anything else you want to ask me or tell me before I decide on your guilty plea?

[Movant]: Just that we would like to petition the Court for probation.

. . . .

[Court]: All right. Court is going to accept the plea of guilty. I do find it was made freely, voluntarily, and intelligently after full understanding of the charges, all rights to trial including a jury trial and the consequences of pleading guilty.

■ We defer to the motion court's determinations with regard to credibility. *Estes v. State*, 950 S.W.2d 539, 541–42 (Mo.App.1997). Here, the motion court had the opportunity to observe Movant's mental state and evaluate his performance at the plea hearing and sentencing. *See id.* at 542.

---

1. The transcript of the plea hearing indicates that the question was asked of Counsel; how-

ever, if it was, Movant apparently answered.

"The suspicion or actual presence of some degree of mental illness or need for psychiatric treatment does not equate with incompetency to stand trial [or plead guilty]." *Hubbard v. State*, 31 S.W.3d 25, 34 (Mo.App.2000) (quoting *Henderson v. State*, 977 S.W.2d 508, 511 (Mo.App.1998)). A defendant is considered competent if he has sufficient present ability to consult with an attorney with a reasonable degree of rational understanding and has both a rational and functional understanding of the proceedings against him. *Woods v. State*, 994 S.W.2d 32, 36 (Mo.App.1999). Although a movant's demeanor may not be dispositive of his competency, it is within the court's discretion to consider that demeanor when determining competency and give it the weight it deems appropriate. *Hubbard*, 31 S.W.3d at 36.

Despite Movant's letters, the record shows nothing in Movant's demeanor, mannerisms, or responses that would raise suspicion that he was incompetent to plead guilty or proceed. *See id.* at 33. Whether or not he was on particular medications at the plea hearing or at the sentencing, the record shows no distinction in Movant's behaviors or type of responses to the court. Therefore, the record refutes his allegations that the voluntariness of his guilty plea was affected by any denial of psychotropic drugs at the time surrounding his guilty plea.

Thus, we cannot say that the court's findings and conclusions were clearly erroneous, particularly the court's finding that, given the circumstances, Movant was not prejudiced by any apparent denial of his psychotropic drugs during the time he was initially held in custody at the Greene County Jail. Therefore, the motion court did not clearly err in denying Movant's motion on this point without an evidentiary hearing. Point I is denied.

*Point II—Ineffective assistance of counsel; Counsel's lack of investigation of mental state*

In his second point, Movant contends that the motion court clearly erred in denying an evidentiary hearing on his claim in which he alleged that he received ineffective assistance of counsel because he had informed Counsel "about matters that would have caused a reasonably competent attorney to question [Movant's] mental stability[.]" Further, according to Movant, if Counsel had properly investigated, he would have discovered that Movant was not receiving his medications and Counsel would therefore have not allowed Movant to plead guilty until such time as Movant was receiving his proper medications.

When a movant who pleads guilty to an offense files a motion for post-conviction relief, he waives all errors regarding ineffective assistance of counsel except those that affect the voluntariness and knowledge of the plea. *Beal v. State*, 51 S.W.3d 109, 111 (Mo.App.2001). Absent an abuse of discretion, we will defer to the trial court's determination of whether a defendant's guilty plea was voluntary. *Jenkins v. State*, 9 S.W.3d 705, 708 (Mo.App.1999).

Movant bears the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Beal*, 51 S.W.3d at 111. To prove ineffective assistance of counsel, Movant must satisfy a two prong test, proving that (1) Counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances, and (2) Counsel's failure prejudiced Movant. *Id.* To establish prejudice, Movant must show that a reasonable probability existed that, but for Counsel's error, Movant would not have entered a guilty plea and would have proceeded to trial. *Id.*

■ "In the absence of some warning sign or suggestion of mental aberration there is no absolute or routine duty on counsel to initiate an independent investigation of the mental condition of the accused." *Ketcherside*, 842 S.W.2d at 183. In a letter written by Movant that was filed with the court nearly a month after he pled guilty to the charges (the first of two letters set out earlier in this opinion), Movant indicates that he had been denied medications for mental illness, needed to be hospitalized, and was seeing spirits. Movant also writes that "[Counsel] and Kathleen Faddis is awair sence last week[.]"

At the sentencing hearing, Counsel stated:

> Your Honor, [Movant] wants me to point out to the Court, and I have verified through my own independent investigation, that he has been evaluated for mental competency in the past in relation to Federal and State charges, the state being Wisconsin. And as a result of those interactions with the psychiatrist and psychologist, he was prescribed lithium and Zoloft. . . . While he's been in the Greene County Jail he has not been able to take that medication.

We question whether the record shows that Counsel had knowledge, prior to Movant's letter filed one month after the plea hearing, of Movant's previous mental illness or that Movant had been denied psychotropic medications while at the Greene County Jail. If Counsel had no such prior knowledge, based on Movant's demeanor and performance at the plea hearing, there may not have been any "warning sign or suggestion of mental aberration" that would have triggered Counsel's duty to conduct such an investigation into Movant's mental stability prior to the plea hearing. *See Ketcherside*, 842 S.W.2d at 183.

■ However, even assuming Counsel had indications prior to the plea hearing of Movant's alleged mental illness and problems related to denial of psychotropic medications, we cannot say that the court clearly erred in finding that, based on Movant's demeanor and performance at both the plea hearing and the sentencing hearing, Movant was not prejudiced and that his guilty plea was voluntary. Therefore, Movant failed to meet the prejudice prong of the ineffective assistance of counsel claim presented in this point. *See Beal*, 51 S.W.3d at 111. Movant's Point II is denied.

*Point III—Ineffective assistance of counsel; Counsel failure to correct Movant's misstatement*

■ In his final point, Movant argues that the motion court clearly erred in denying his motion without an evidentiary hearing on the claim in which he alleged he received ineffective assistance of counsel because Counsel, having been informed of Movant's history of mental illness and the denial of psychotropic medications at the Greene County Jail, failed to correct Movant's misstatement at the plea hearing. At the plea hearing, in response to the court's question as to whether he had a history of any mental or psychological problems, Movant stated that he did not. According to Movant, had Counsel corrected Movant's statement at the plea hearing, the court would have gained knowledge of Movant's "active mental illness" and Movant would not have pled guilty.

Based on the standard of review stated in Point II and the general standard of review stated above, we cannot say that the motion court clearly erred in denying Movant an evidentiary hearing on this point. The motion court did not clearly err in finding that, based on Movant's demeanor, behavior, and responses at both

the plea hearing and sentencing hearing, he was not prejudiced and that his guilty plea was voluntary. Thus, as with Point II, Movant failed to meet the prejudice prong of this ineffective assistance of counsel claim. Point III is denied.

The motion court's judgment is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.