**Matthew Wayne COOK,
Movant–Appellant,**

v.

**STATE of Missouri, Respondent–
Respondent.**

**No. 26981.**

Missouri Court of Appeals,
Southern District,
Division One.

April 19, 2006.

Rehearing Denied May 5, 2006.

Application for Transfer Denied
June 30, 2006.

---

1. All statutory references are to RSMo.2004, unless otherwise indicated.

Thomas D. Carver, Springfield, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Assistant Attorney General, Jefferson City, for Respondent.

GARY W. LYNCH, Judge.

On February 6, 2001, Matthew Wayne Cook (Defendant) entered a plea of guilty in the Circuit Court of Christian County to one count of attempted forcible sodomy, pursuant to § 566.060, and one count of child molestation in the first degree, pursuant to § 566.067.[1] The following month, Defendant was sentenced to serve thirty years on the sodomy charge and, concurrently, seven years on the child molestation charge. Thereafter, Defendant timely filed a Rule 24.035 motion seeking post-conviction relief (Motion). The Motion asserted two claims: first, that Defendant's plea was not entered knowingly and voluntarily and, second, that Defendant received ineffective assistance of counsel during his plea hearing and during his sentencing. Following an evidentiary hearing, Defendant abandoned the first claim and proceeded solely on his ineffective assistance of counsel claim. The motion court issued its findings of fact and conclusions of law

denying the Motion, and Defendant appealed. We affirm.

### 1) *Standard of review*

■ Our review of the denial of a post-conviction relief motion is limited to a determination of whether the findings of fact and conclusions of law of the motion court are clearly erroneous. Rule 24.035(k); *Smith v. State,* 28 S.W.3d 417, 419 (Mo.App.2000). The motion court's findings are deemed clearly erroneous if, after a review of the entire record, we are left with a firm and definite impression that a mistake has been made. *Id.* The motion court's findings are presumptively correct. *Crawford v. State,* 105 S.W.3d 926, 927–28 (Mo.App.2003).

■ When considering motions for post-conviction relief due to ineffective assistance of counsel, Missouri looks to the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* a defendant seeking this type of relief must show that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under substantially similar circumstances and that defendant was thereby prejudiced. 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. A defendant must prove both aspects of the test in order to succeed on his ineffective assistance of counsel claim:

> A criminal defendant must satisfy *both* the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim. In reviewing such a claim, courts are not required to consider both prongs; if a defendant fails to satisfy one prong, the court need not consider the other. And, a court

---

1. All references to statutes are to RSMo (2000) and all references to rules are to Missouri Court Rules (2005), unless otherwise indicated.

need not determine the performance component before examining for prejudice. If it is easier to dispose of the claim on the ground of lack of sufficient prejudice, the reviewing court is free to do so.

*Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987).

■ Since Defendant's conviction resulted from a guilty plea, a claim of ineffective assistance of counsel is immaterial, except to the extent that it infringes upon the voluntariness and knowledge with which the guilty plea was made. *Hagan v. State,* 836 S.W.2d 459, 463 (Mo. banc 1992). Accordingly, Defendant must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *State v. Nunley,* 980 S.W.2d 290, 292 (Mo. banc 1998).

### 2) *Defendant's Deficient Points Relied On*

■ Rule 84.04(d)(1)(A) requires that each point relied on "shall identify the trial court ruling or action that the appellant challenges." Once the challenged trial court ruling or action is identified, the point relied on "shall state concisely the legal reasons for the appellant's claim of reversible error." Rule 84.04(d)(1)(B).

Finally, having stated the legal reason for claimed reversible error, the point relied on "shall explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d)(1)(C). The function of this rule is to provide notice to the opposing party of the exact matters which must be contended with and to inform the court of the issues presented for review. *Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978).

■ Both of Defendant's points relied on are deficient.[2] Neither identifies the motion court's ruling or action that is challenged. Rule 84.04(d)(2)(A). Also, Defendant does not concisely state the legal reasons for his claims of reversible error, nor does he explain why, in the context of this case, those legal reasons support the claims. Rule 84.04(d)(2)(B)-(C). "It is not sufficient to merely set out what the alleged errors are, without stating why the ruling is erroneous." *Murphy v. Aetna Cas. & Sur. Co.,* 955 S.W.2d 949, 950 (Mo. App.1997). Defendant's points relied on appear to be nothing more than abstract statements of law inviting this court to engage in a *de novo* review of the motion

2. Defendant's point I reads as follows:

Trial counsel was ineffective in that his performance fell below an objective standard of reasonableness when he pleaded Matthew Wayne Cook guilty to the crime of attempted forcible sodomy and the class C felony of child molestation in the 1st degree knowing that his client was mentally impaired and that he had not thoroughly investigated his impairment, and knowing that he did not explain the significance of pleading guilty in terms that were understandable to Matthew Cook, did nothing to make the court of aware of Mr. Cook's disability and did not explain the ranges of punishment to Mr. Cook prior to the guilty plea hearing, all of which prejudiced Matthew Cook through the entry of a guilty

plea that was neither knowing nor voluntary.

Defendant's Point II reads as follows:

Trial counsel was ineffective in his representation of Matthew Cook under the Sixth Amendment in that his performance fell below an objective standard of reasonableness when he failed to investigate and discover all reasonably available mitigating evidence along with evidence to rebut aggravating evidence contained in the presentence investigation report that pointed to Cook's propensity to commit sex crimes, which evidence of mitigation, if it had been presented, would have resulted in a reasonable probability that a sentence of less than 30 years['] imprisonment would have been received.

court's denial of the Motion. This we can not do.

 Even so, whether an appeal will be dismissed for failure to comply with Rule 84.04 is discretionary. *Keeney v. Mo. Highway & Transp. Comm'n,* 70 S.W.3d 597, 598 n. 1 (Mo.App.2002). "That discretion is generally not exercised unless the deficiency impedes disposition on the merits. 'A brief impedes disposition on the merits where it is so deficient that it fails to give notice to (the court) and to the other parties as to the issue presented on appeal.'" *Id.,* quoting *Wilkerson v. Prelutsky,* 943 S.W.2d 643, 647 (Mo. banc 1997). Although Defendant's points are technically deficient, we conclude that they provide sufficient notice to the parties and to this Court as to the issues presented on appeal. Thus, they will be treated as if preserved for appellate review.

### 3) *Defendant's Claims*

In attempting to reach the merits of Defendant's appeal, we will consider Defendant's claims as if he is contending that the motion court erred in denying the Motion because the motion court's findings and conclusions that Defendant's plea counsel was not ineffective during Defendant's plea hearing or Defendant's sentencing are clearly erroneous, in the respects contended by Defendant in each of his points relied on.

In his first point, Defendant asserts that plea counsel was ineffective in that plea counsel's performance fell below an objective standard of reasonableness when he allowed Defendant to proceed with a guilty plea to the charged crimes. Defendant complains about four actions of plea counsel: 1) plea counsel knew that Defendant was mentally impaired, and plea counsel did not thoroughly investigate the impairment; 2) plea counsel did not explain the significance of pleading guilty in terms

that were understandable to Defendant; 3) plea counsel did nothing to make the court aware of Defendant's disability; and 4) plea counsel did not explain the ranges of punishment to Defendant prior to the guilty plea. Defendant claims that all of these inactions prejudiced him through the entry of a guilty plea that was neither knowing nor voluntary.

 Unfortunately we can only reach the merits of Defendant's first claim under his first point. The argument portion of Defendant's brief fails to make any mention of or cite any authority for his second claim; that plea counsel failed to explain the significance of pleading guilty in terms that were understandable to Defendant. Defendant's failure to pursue or state any argument or cite any authority for this claim is deemed an abandonment or waiver of the claim. *McDaniels v. State,* 806 S.W.2d 450, 451 (Mo.App.1991); *State v. Franks,* 685 S.W.2d 845, 849 (Mo. App.1984). Defendant's third claim under his first point, failure to advise the court of Defendant's mental capabilities at the plea hearing, and fourth claim under his first point, failure to explain the range of punishment to defendant, were not alleged or included in the Motion. An appellant is bound by the issues raised and arguments made in the lower court and may not raise new and totally different arguments on appeal. *State v. Winfield,* 5 S.W.3d 505, 515 (Mo. banc 1999). Any claims or allegations not raised in the post-conviction motion are considered waived on appeal. *State v. Clay,* 975 S.W.2d 121, 141 (Mo. banc 1998). Thus, Defendant's third and forth claims under his first point are waived and cannot be reviewed by this Court.

In his second point, Defendant claims that plea counsel was ineffective in preparation for and during Defendant's sentencing under the Sixth Amendment, in that

his performance fell below an objective standard of reasonableness when plea counsel failed to investigate and discover all reasonably available mitigating evidence along with evidence to rebut aggravating evidence contained in the pre-sentence investigation report that pointed to Defendant's propensity to commit sex crimes. Defendant further alleges that if plea counsel had presented such evidence, it would have resulted in a reasonable probability that a sentence of less that thirty years' imprisonment would have been imposed.

### 4) *Motion Court's Findings and Conclusions*

Rule 24.035(j) provides that the motion court "shall issue findings of fact and conclusions of law on all issues presented." "The findings of fact and conclusions of law must be sufficiently specific to allow meaningful appellate review." *Barry v. State*, 850 S.W.2d 348, 350 (Mo. banc 1993). We are at a loss to ascertain how Defendant expects us to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous when Defendant's brief completely and utterly fails to mention or reference any finding of fact or conclusion of law made by the motion court. This omission coupled with Defendant's roving fact citations to the record in the light most favorable to Defendant's position is another invitation for us to conduct a *de novo* review of the motion court's denial of the Motion. Once again, we decline that invitation. Because of Defendant's failure to mention them, we are constrained to quote extensively from the motion court's findings of fact and conclusions of law in order to reach the merits of Defendant's claims.

The motion court made the following findings related to Defendant's claims:

3. [Defendant] attended public schools, had been placed in special education classes, graduated from high school, receiving a high school diploma, and held a valid Missouri driver's license.

4. [Defendant] had held numerous jobs in the Taney County area, beginning as a teenager, and continuing until the date of his arrest, at age 26, holding his most recent job for approximately three years.

5. When deputies with the Taney County Sheriff's Department came to question and ultimately arrest [Defendant] for the underlying criminal offense, the deputy requested that [Defendant] produce a certain pair of jeans that [Defendant] had been wearing at the time of the offense, and [Defendant] was able to understand the question and appropriately respond, with [Defendant] telling his father where the pants would be located, with the father bringing out a different pair of pants, at which time the [Defendant] corrected the father and sent him back to retrieve the correct pants. [Defendant] had the ability to understand the officer's request regarding the pants, and [Defendant] directed his father to retrieve the appropriate pair of pants, and [Defendant] even had the ability to understand that the pants the father had retrieved were not the correct pants that the deputy was looking for, with [Defendant] having the ability and understanding to even correct the father when the father brought out the wrong pair of pants.

6. Witness Nancy Cowardin, Ph.D., was called at the PCR hearing by [Defendant] to provide a professional and expert opinion as to whether or not the [Defendant] understood that he was pleading guilty. Dr. Cowardin testified that the [Defendant] had an IQ of 76, with a margin of error of 6 points, plus or minus, and that while IQs in the

range of 72 to 75 are considered below average, that it would be questionable whether [Defendant] qualifies today as a person with mental retardation. [Defendant] failed to establish that he is classified as suffering from mental retardation.

7. Dr. Cowardin testified [Defendant's] receptive vocabulary, which is the words he hears, is at the age of 17 years, which, in Dr. Cowardin's own words, "is certainly a good score[.]" [Defendant] failed to establish that he lacked the mental ability to understand what was being said to him at the plea hearing and sentencing hearing. [Defendant] did understand what was being said to him at the plea hearing and sentencing hearing.

8. [Defendant] did not testify at the PCR hearing and thus did not provide any testimony to benefit or prove his PCR claims, including providing no testimony that he did not understand he was pleading guilty, nor did [Defendant] provide any testimony at the PCR hearing that he did not understand what the Court was saying to him when he earlier [pleaded] guilty, nor did [Defendant] testify at the PCR hearing that he did not understand what he was doing when he told the Court that his plea was free and voluntary on the date that he [pleaded] guilty. [Defendant's] failure to testify at the PCR hearing creates the inference that such testimony would have been unfavorable to the [Defendant's] position in his PCR claims.

9. [Defendant] relayed to criminal plea counsel what acts [Defendant] had done to the juvenile female victim in this case. [Defendant] discussed with his criminal plea counsel the availability and possibility of the [D]efendant receiving a 120–day callback program, and possible treatment in a sex offender's treatment program. [Defendant] cooperated in an evaluation of his mental capabilities performed by Dr. Burstin of Springfield, Missouri, and the results of said test were discussed between [Defendant] and his attorney resulting in trial strategy decisions being made as to how best to proceed, including [Defendant] discussing with his criminal plea counsel the evidence of the case. [Defendant] cooperated and participated in the examination or testing of [Defendant] by Teresa Schultz, a licensed professional counselor, used by [Defendant] as mitigation at sentencing. [Defendant] was capable of and did understand the proceedings against him and the need and importance to discuss these issues with his criminal plea counsel, and to relay and communicate this information to his attorney, and was capable of and did assist in his own defense with a reasonable degree of rational understanding, and a factual understanding of the proceedings against him.

10. [Defendant's] criminal plea counsel's efforts to determine the degree of [Defendant's] mental impairment before encouraging [Defendant] to enter a guilty plea included obtaining school records of [Defendant] including [Defendant's] special education classes. Criminal plea counsel arranged for [Defendant] to have an appointment and consultation with Dr. Kenneth Burstin in Springfield, Missouri, for the purposes of whether or not there existed any insanity defense as well as to determine [Defendant's] capacity with regard to the legal proceedings, including capacity to stand trial and/or [plead] guilty. Criminal plea counsel had discussions with Dr. Burstin and determined that the insanity defense was not a viable defense, and further that Dr. Burstin's findings did the defense no good, as such findings of Dr. Burstin

were not favorable to the defense, and that Dr. Burstin could not express an opinion that [Defendant] was suffering from a mental disease or defect.

11. A trial and legal strategy was developed by the [Defendant] and by his criminal plea counsel to plead guilty and seek mercy from the Court rather than standing trial.

12. Criminal plea counsel did not render ineffective assistance of counsel, where he did have the matter of [Defendant's] alleged incompetence investigated, but that investigation revealed no incompetence and no lack of capacity on the part of [Defendant] existed. [Defendant's] PCR claims alleging ineffective assistance of counsel[,] alleging failure to make efforts to determine the degree of [Defendant's] alleged mental impairment, and alleging failure to explore [Defendant's] alleged mental abnormality, before allegedly encouraging [Defendant] to plead guilty, are denied, as [Defendant] has not proven same.

Conclusions by the motion court include the following:

3. [Defendant's] attorney properly investigated [Defendant's] mental capacity. He hired a psychologist, Dr. Burstin[,] to evaluate [Defendant] to determine whether or not he [was] suffering from a mental disease or defect and to ascertain his mental capabilities. He hired a licensed professional counselor, Teresa Schultz[,] to evaluate [Defendant] and provide alternatives and recommendations as to the disposition of [Defendant's] case.

[Defendant's] attorney recognized [Defendant's] limitation and took steps necessary to determine whether or not those limitations would prevent [Defendant] from entering a knowing and voluntary plea.

4. [Defendant] did not prove that criminal plea counsel's representation fell below an objective standard of reasonableness, and did not prove a reasonable probability that, but for his criminal plea counsel's alleged unprofessional errors, the result of the proceeding would have been different. Defendant was not denied effective assistance of counsel. The efforts of criminal plea counsel representing [Defendant] in the underlying case did meet the degree of skill and competence of the reasonably competent attorney, and [Defendant's] defense was not prejudiced by inadequate performance. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S.Ct. 2052, 2064–2065, 80 L.Ed.2d 674 (1984).

## 5) *Discussion*

### a) *Effectiveness of Plea Counsel During Plea Hearing*

 Defendant's sole remaining reviewable claim of ineffective assistance of plea counsel related to the plea hearing is that plea counsel did not thoroughly investigate Defendant's mental impairment. In order to show that counsel was ineffective in failing to investigate an alleged mental disease or defect defense, a movant must show facts indicating a questionable mental condition. *State v. Roll*, 942 S.W.2d 370, 376 (Mo. banc 1997). In addition, this Court must look to the reasonableness of counsel's conduct from counsel's perspective at the time and eliminate hindsight from consideration. *Baird v. State*, 906 S.W.2d 746, 749 (Mo.App.1995). "The suspicion or actual presence of some degree of mental illness or need for psychiatric treatment does not equate with incompetency to stand trial." *Henderson v. State*, 977 S.W.2d 508, 511 (Mo.App.1998). "In fact, an accused may be mentally retarded in some degree and still be competent to stand trial or enter a knowing, intelligent

plea of guilty." *Id.*, citing *Pulliam v. State*, 480 S.W.2d 896, 904 (Mo.1972).

▇▇ Early on in his representation of Defendant, plea counsel was aware that there might be a possibility that Defendant suffered from mild retardation. As a result of this information, counsel hired Dr. Burstein to investigate whether Defendant had any mental disease or defect and partially to determine Defendant's capacity to proceed. Though plea counsel did not seek a written report, he did speak with Dr. Burstein about his observations, and these discussions led counsel to abandon a defense based on mental disease or defect.[3] Although Defendant refers to Dr. Burstein's evaluation as being "cursory," Defendant failed to present any evidence at the hearing on the Motion related to what Dr. Burstein did or did not do on his evaluation of Defendant or that any psychological conclusions by Dr. Burstein were incorrect. Absent perceived shortcomings in the mental evaluation report (albeit verbal and not in written form) or any manifestation of mental disease or defect not identified by prior reports, the attorney representing the defendant in a criminal case is not compelled to seek further evaluation. *Gooden v. State*, 846 S.W.2d 214, 218 (Mo.App.1993). Thus, the performance prong of the ineffective assistance of counsel test has not been met by Defendant.

Neither has Defendant met the prejudice prong of the test. Defendant failed to plead in his Motion and failed to adduce any evidence at the hearing on the Motion, that had plea counsel investigated the situation further Defendant would have insisted on going to trial. *Patterson v. State*, 92 S.W.3d 212, 215 (Mo.App.2002). Other than the repeated conclusion that Defendant was "unfairly prejudiced" by the actions or inactions of plea counsel, the Motion is void of any facts supporting prejudice. "The mere assertion that he was 'prejudiced' is far too vague to amount to a declaration that but for his attorney's failure, he would not have pleaded guilty and would have chosen to go to trial." *Id.* The failure to allege in the Motion facts demonstrating prejudice merits the denial of the claim. *Barringer v. State*, 35 S.W.3d 493, 496–97 (Mo.App. 2000). Even if the allegations of prejudice standing alone without alleging any facts in support of those conclusions were sufficient to support the Motion, which they are not, the failure to present any evidence on this issue during the hearing on the Motion dooms Defendant's claim for relief. Such a failure requires our determination that the motion court's conclusion that Defendant failed to carry his burden of proof on this issue is not clearly erroneous.

We have reviewed the entire record including the transcript of the plea hearing and the transcript of the hearing on the Motion. In such review, we gave "due regard to a motion court's ability to assess the credibility of witnesses appearing before it" and deferred "to the motion court's determination of witness credibility." *Harris v. State*, 184 S.W.3d 205, 209 (Mo.App.2006). In addition, we note that it was the motion court's responsibility to weigh the evidence. *Wilkins v. State*, 802 S.W.2d 491, 501 (Mo.1991). The motion

---

**3.** Defendant cites the lack of a written report from Dr. Burstin in support of his claim that plea counsel did not adequately investigate his mental condition. However, the lack of a report from an expert who determined that the insanity defense was not a viable defense, whose findings were not "favorable" and did the defense "no good," and who determined that Defendant was not suffering from a mental disease or defect, would, given the rules of discovery, more likely support a reasonable inference that plea counsel was providing very effective counsel for Defendant.

court may reject any witness' testimony even though no contrary evidence is offered.[4] *Id.* From this review of the entire record, we have determined that each of the motion court's findings of fact is supported by competent evidence in the record and that those findings of fact and the conclusions of law are not clearly erroneous. Defendant's Point I is denied.

### b) *Effectiveness of Plea Counsel in Preparation For and During Sentencing*

■ In his second point, Defendant asserts that plea counsel was ineffective at the time of sentencing by failing to present all mitigating evidence and that had such evidence been presented it would have resulted in a reasonable probability that a sentence of less than thirty years would have been received. Defendant characterizes plea counsel's efforts in preparation for and at the Defendant's sentencing as "cursory and inadequate." The movant must demonstrate that he was prejudiced by plea counsel's alleged poor performance. *State v. Hall,* 982 S.W.2d 675, 680 (Mo. banc 1998). Since Defendant's conviction was the result of a plea of guilty, the Court may only evaluate an ineffective assistance of counsel claim to the extent that it impacts the knowing and voluntary nature of the plea. *Hagan,* 836 S.W.2d at 463.

Before the sentencing hearing, the court received a pre-sentence investigation report (Report), in which Probation Officer Roy Seckington recommended that Defendant be denied probation. As part of the investigation, Defendant completed a Sexual Adjustment Inventory questionnaire, in which he scored in the ninety-fifth percentile in sexual adjustment, indicating serious problems with his sexual adjustment, and which Seckington described as "very unsatisfying, frustrating, and distressing." Seckington recommended sexual counseling therapy. Defendant also scored in the ninety-seventh percentile for child molestation, with many indicators showing that he was a potential pedophile. Seckington stated that "counseling appears appropriate at this time."

The Report also referred to a letter written by Theresa Schultz, a licensed professional counselor, who had interviewed Defendant. Schultz said Defendant "is backward, lacks knowledge, and has few social skills," was "naively honest," and had emotional problems. She concluded that, due to his remorsefulness, his motivation to treat his behavior, and his youth, which would make it possible to change his thought patterns, Defendant was a good candidate for a "successful outcome in treatment." Schultz recommended assessment in the Department of Corrections Sex Offender Assessment Unit (SOAU), followed by continued outpatient counseling, should the SOAU determine release was acceptable.

Defendant called Schultz to testify at his sentencing hearing. Following a stipula-

---

4. It is very clear that Defendant places great weight upon the testimony of Dr. Cowardin, whom Defendant describes as "an expert in educational diagnostics." Defendant cites freely and regularly from her testimony in support of his claim that plea counsel was ineffective for failing to further investigate Defendant's mental capacity given Dr. Cowardin's *opinion* of Defendant's limited ability to receive, process and understand the guilty plea paperwork and hearing. However, it is equally clear that the motion court did not place very much weight upon her testimony. As the finder of fact, it was free to do so. We note that her failure to analyze any part of the language used in the plea hearing other than the plea court's statement to Defendant advising him of his post-conviction rights and her failure to ask any direct questions of Defendant as to whether he in fact understood the guilty plea paperwork and hearing, coupled with the Defendant's high school diploma, driver's license and demonstrated ability to hold a productive job, would support the motion court's discount of her testimony.

tion by the State and Defendant as to her qualifications, Schultz testified that she was an approved Missouri Sex Offender Program counselor, that she worked with both the victims and perpetrators of abuse, and that she had treated more than 1,000 sex offenders in her career. She repeated her opinion that Defendant was amenable to treatment in the community, and stated that, while Defendant could develop into a pedophile without treatment, he was not one at the present time. She testified that, while she had not reviewed the Report, she had spoken with the probation officer who completed the Report, and she had a different point of view than he. When asked about the Sexual Adjustment Inventory, she testified that the high scores on the test were attributable to the mere fact alone that Defendant had admitted to this crime, as just that one question about the current crime would cause the kind of high scores Defendant scored on the test. Schultz testified that she had spoken with the designer of that test, who confirmed this information about the test. Schultz' testimony minimized the meaning of the test scores, stating that the scores showed nothing more than the fact that Defendant admitted he committed this crime and were not an indication of his future dangerousness.

With her considerable experience in counseling sex offenders and her knowledge of the test mentioned in the Report, Defendant would be hard-pressed to identify an expert witness more qualified than Schultz to try to mitigate the information contained in the report, even if he had tried to identify such an expert, which he failed to do.

From our review of the entire record, we are not left with a firm and definite impression that a mistake has been made by the motion court in its findings of fact that plea counsel properly investigated De-fendant's mental capacity at the plea hearing and sentencing by hiring Dr. Burstin, a psychologist, to evaluate movant to determine whether or not Defendant was suffering from a mental disease or defect and to ascertain Defendant's mental capabilities, and by hiring Teresa Schultz to evaluate Defendant and provide alternatives and recommendations as to the disposition of Defendant's case. These findings support a conclusion that Defendant failed to meet his burden of proving the performance prong of the ineffective assistance of counsel test on his second point. These findings and conclusions are not clearly erroneous.

As discussed under Defendant's first point, Defendant has failed to plead or prove the prejudice prong of the ineffective assistance of counsel test. Defendant testified at the guilty plea hearing that he had not been threatened or forced and that his plea was made freely and voluntarily. He further testified, after receiving his sentence, that he was satisfied with plea counsel's services and did not have any complaints or criticisms. There is no evidence that plea counsel's performance at the sentencing phase impacted Defendant's decision to plead guilty. The motion court's findings of fact and conclusions of law that Defendant was not prejudiced by any alleged ineffective assistance of plea counsel are not clearly erroneous.

Defendant's point II is denied.

### 6) Decision

The judgment of the motion court denying Defendant's Motion for Post–Conviction Relief under Rule 24.035 is affirmed.

RAHMEYER, P.J., and PARRISH, J., concur.