CORY D. JONES, )
 )
 Movant-Appellant, )
 )
v. ) No. SD36913
 ) Filed: November 23, 2021
STATE OF MISSOURI, )
 )
 Respondent-Respondent. )

 APPEAL FROM THE CIRCUIT COURT OF WAYNE COUNTY

 Honorable Megan K. Seay, Circuit Judge

AFFIRMED

 Cory Jones (Jones) appeals from an order denying his amended Rule 24.035 motion

to set aside his conviction for first-degree murder, for which he received a sentence of life

imprisonment without the possibility of parole. See § 565.020.1 Because the motion

court’s decision to deny relief after an evidentiary hearing was not clearly erroneous, we

affirm.

 Jones bore the burden of proving the grounds asserted in his post-conviction motion

by a preponderance of the evidence. Rule 24.035(i); Gales v. State, 533 S.W.3d 796, 799

 1
 All rule references are to Missouri Court Rules (2018). All statutory references
are to RSMo (2000).
(Mo. App. 2017). Appellate review of an order denying a motion for post-conviction relief

is limited to a determination of whether the court’s findings of fact and conclusions of law

are “clearly erroneous.” Rule 24.035(k); Booker v. State, 552 S.W.3d 522, 526 (Mo. banc

2018). “The motion court’s findings and conclusions are clearly erroneous only if,” after

review of the record, this Court is “left with a definite and firm impression that a mistake

was made.” Ross v. State, 335 S.W.3d 479, 480 (Mo. banc 2011); Booker, 552 S.W.3d at

526. On review, the motion court’s findings are “presumptively correct.” Wilson v. State,

813 S.W.2d 833, 835 (Mo. banc 1991); Gales, 533 S.W.3d at 799. The motion court was

free to believe or disbelieve any evidence, whether contradicted or undisputed, including

Jones’ testimony. Vanzandt v. State, 212 S.W.3d 228, 231 (Mo. App. 2007). “This Court

defers to the motion court on matters of credibility.” Id.; see Stacker v. State, 357 S.W.3d

300, 303 (Mo. App. 2012). The following summary of facts has been prepared in

accordance with these principles.

 Jones was charged by a four-count information with the following offenses

occurring in May 2016: Count 1 – the class A felony of first-degree murder, which alleged

that Jones, after deliberation, knowingly caused the death of his wife (Victim); Count 2 –

the unclassified felony of armed criminal action for the alleged use of a deadly weapon in

the murder; and Counts 3 and 4 – endangering the welfare of a child when Jones knowingly

shot Victim in close proximity to two children. Count 3 involved his 12-year-old daughter

(Daughter), and Count 4 involved a one-year-old infant whom Daughter was babysitting.

 Thereafter, a plea agreement was reached. In exchange for a guilty plea on Count

1, the State agreed to dismiss the remaining three counts. The State also waived its intent

to seek the death penalty.

 2
 In September 2017, a hearing was held at which Jones pled guilty to the charge of

first-degree murder. Jones testified to the plea court that, inter alia: (1) he understood the

nature of the charge and the range of punishment; (2) he was not under the influence of

alcohol, any controlled substance, or any medication at the time of the plea; (3) he

understood the constitutional rights associated with the right to a jury trial and appeal that

he was waiving; and (4) he was pleading guilty because he was “in fact, guilty” and

“committed the offense charged[.]”

 In his own words, Jones testified: “Me and my wife got into an argument one

afternoon. I went upstairs, come back downstairs, and I ended up shooting her.” Jones

confirmed that he went upstairs to obtain the gun for the purpose of shooting Victim and

did not dispute that Victim died as a result of that gunshot. The plea court asked plea

counsel whether he had “any reason to believe [Jones was] suffering from any mental

illness, disease, defects or delusions of any kind[,]” and counsel responded: “No, Your

Honor.” The court found that Jones’ guilty plea was “made freely, voluntarily and

intelligently, with full understanding of the charge and consequence of a plea and with full

understanding of his rights attending a trial, and the effect of a plea of guilty on those

rights.” The court accepted Jones’ plea and sentenced him to life in prison without the

possibility of parole.

 In February 2018, Jones timely filed an original Rule 24.035 motion for post-

conviction relief. Appointed counsel filed an amended motion.2 In the amended motion,

counsel alleged, inter alia, that plea counsel was ineffective for “failing to investigate and

 2
 This Court has independently verified the timeliness of Jones’ original and
amended post-conviction motions. See Moore v. State, 458 S.W.3d 822, 825-26 (Mo. banc
2015); Dorris v. State, 360 S.W.3d 260, 268 (Mo. banc 2012).
 3
obtain evidence of [Jones’] history of mental illness[.]” The amended motion also alleged

that counsel was aware that Jones: (1) attempted suicide after shooting Victim by shooting

himself under the chin; (2) was intoxicated at the time of the shooting and had a “history

of alcohol abuse”; (3) had a “history of hospitalizations and treatment for alcoholism and

mental illness”; and (4) was prescribed “an antipsychotic” medication and a medication

used to treat “depression and its related insomnia and anxiety disorders” during his

detention for the underlying charges. Lastly, the amended motion alleged that but for plea

counsel’s failure to investigate Jones’ mental illness, Jones would not have pled guilty and

insisted on going to trial “if his mental health and/or history of alcoholism would have been

investigated and his records obtained so they would [or] could be available for a jury trial

and sentencing[.]”

 In June 2020, the motion court held an evidentiary hearing. Three witnesses

testified: Jones’ plea counsel, Wayne Williams (Williams); a psychologist, Dr. Richard

Scott (Dr. Scott); and Jones.

 Williams gave the following testimony. He spoke with Jones on “at least four or

five occasions that’s documented” and “three or four” other times. During these

interactions with Jones, Williams “never once thought there [were] any issues whatsoever

with his competency.” Williams testified that Jones was “very responsive [and] very

articulate.” Jones “was able to converse with us during the preliminary hearing about our

questions … and he had relevant follow-ups.” Williams also spoke with Jones about using

the defense of “not guilty by reason of insanity” (NGRI), and Jones told him “on several

occasions he did not want to pursue a mental health defense.” Jones was also unable to

give information about his previous medical providers. According to Williams, Jones

wanted to plead guilty to prevent the possibility of spending “an indefinite period of time”

 4
in a mental health facility. More importantly, Jones wanted to plead guilty to protect

Daughter from the “trauma of testifying” at a jury trial.

 Dr. Scott testified as Jones’ mental health expert, but the doctor’s testimony was

not helpful to Jones. Dr. Scott “looked at how [Jones] was diagnosed by the persons

treating him at the time as well as what was reported about his conduct … before the crime

in the hours leading up to it and the level of intoxication[.]” Dr. Scott “came to the

conclusion that these conditions did not rise to the level of a mental disease or defect.” The

doctor noted that Jones was “highly intoxicated at the time of the crime” but “intoxication

cannot be a mental disease or defect per the statute.” Had Dr. Scott been called at

sentencing, he would have had “pluses and minuses” to contribute.

 Jones could not remember if he had told Williams he had a prior mental health

history. When Jones was asked if he would have been able to articulate such information

to his attorney, he responded: “I would like to think I would have known where and what

doctor I had seen.” Jones also admitted to previously lying under oath.

 Thereafter, the motion court issued findings of fact and conclusions of law denying

post-conviction relief. The judge concluded that counsel “does not have a duty to initiate

an investigation of a mental condition of the accused in the absence of some suggestion of

current mental instability.” The court found that Williams had “no indication” of a need

for a mental evaluation of Jones, as Jones “appeared fully competent and [Jones] expressed

no desire to utilize a NGRI defense.” Further, Williams had a “justifiable and strategic

reason” for Jones to plead guilty, “both to protect [Daughter] from having to testify and to

prevent the possibility of spending an indefinite period of time in a mental health facility.”

The court found Williams’ testimony was further supported by Dr. Scott, who testified that

a finding of mental disease or defect was unlikely and that his testimony about mental

 5
illness at sentencing “would have had both ‘pluses and minuses.’” The motion court found

Williams’ “testimony more credible than that of [Jones].” The court ultimately determined

that Jones’ claim “does not rise to the level of deficient performance that would have

prejudiced the defense.” This appeal followed.

 Jones contends the motion court clearly erred in denying post-conviction relief

because he received ineffective assistance of counsel. Since Jones pled guilty, a claim of

ineffective assistance of counsel is immaterial except to the extent that it infringed upon

the voluntariness and knowledge with which the guilty plea was made. Booker, 552

S.W.3d at 531; Worthington v. State, 166 S.W.3d 566, 573 (Mo. banc 2005). To prevail

on a claim of ineffective assistance of counsel, Jones had to prove that plea counsel failed

to exercise the customary skill and diligence that a reasonably competent attorney would

perform under similar circumstances and that Jones was thereby prejudiced. Booker, 552

S.W.3d at 531; see Strickland v. Washington, 466 U.S. 668, 687 (1984).

 Under Strickland, to satisfy the first, performance prong when a movant claims

counsel should not have allowed the movant to enter a guilty plea without investigating the

movant’s mental condition, the movant must show “a factual basis indicating a

questionable mental condition” that should have caused the attorney to initiate an

independent investigation of the movant’s mental state. State v. Carter, 955 S.W.2d 548,

555 (Mo. banc 1997); Cooper v. State, 621 S.W.3d 624, 632 (Mo. App. 2021); Washington

v. State, 598 S.W.3d 656, 667-68 (Mo. App. 2020); see also Henderson v. State, 977

S.W.2d 508, 511 (Mo. App. 1998) (“[i]n the absence of some suggestion of mental

instability, there is no duty on counsel to initiate an investigation of the mental condition

of an accused”); see, e.g., Gooch v. State, 310 S.W.3d 275, 280 (Mo. App. 2010); Azbell

v. State, 144 S.W.3d 863, 873 (Mo. App. 2004). To satisfy the prejudice prong when a

 6
movant claims counsel should not have allowed the movant to enter a guilty plea without

investigating the movant’s mental condition, “the movant must show a reasonable

probability [he or she] was not competent at the time in question.” Cooper, 621 S.W.3d at

632; Washington, 598 S.W.3d at 668. “A defendant is presumed competent and bears the

burden of showing a lack of competence.” Washington, 598 S.W.3d at 667. “Appellate

review of the reasonableness of trial counsel’s conduct is viewed from counsel’s

perspective at the time and not from hindsight.” Cooper, 621 S.W.3d at 632; see

Henderson, 977 S.W.2d at 511.

 Jones argues that plea counsel was ineffective for “failing to investigate Mr. Jones’

mental health issues where a factual basis indicated Mr. Jones’ questionable mental

condition[.]” According to Jones, he “was prejudiced by his counsel’s deficient

performance because there was a reasonable probability he was incompetent at the time of

the plea hearing.” We disagree.

 Jones failed to satisfy the first, performance prong under Strickland. See Cooper,

621 S.W.3d at 635. Specifically, Jones failed to carry his burden to show a factual basis

indicating a questionable mental condition that should have caused Williams to consider

Jones’ ability to proceed before allowing Jones to enter a guilty plea. See id. at 635. “The

test for competency is whether the accused has sufficient present ability to consult with his

lawyer with a reasonable degree of rational understanding, and whether he has a rational

as well as a factual understanding of the proceedings against him.” Cooper, 621 S.W.3d

at 631 (internal quotation marks and citations omitted); see Henderson, 977 S.W.2d at 511.

Here, the motion court believed Williams’ testimony that: (1) there was no indication of

mental instability; (2) Jones had the ability to consult with counsel, and to understand and

participate in the proceedings against him; and (3) Jones wanted to plead guilty both to

 7
protect Daughter from having to testify and to prevent the possibility of spending an

indefinite period of time in a mental health facility. Williams’ testimony is supported by

Dr. Scott’s opinion that Jones did not suffer from a mental defect at the time of the plea.

The motion court was free to believe or disbelieve any evidence, whether contradicted or

undisputed, and this Court defers to the credibility determinations of the motion court.

Stacker, 357 S.W.3d at 303; Gold v. State, 341 S.W.3d 177, 180-81 (Mo. App. 2011).

Because Jones failed in his burden to show a factual basis indicating a questionable mental

condition that should have caused Williams to further investigate, Jones failed to show

deficient performance by Williams as required under the first prong of Strickland. See

Cooper, 621 S.W.3d at 635; Cook v. State, 193 S.W.3d 378, 387 (Mo. App. 2006); see also

Henderson, 977 S.W.2d at 511. Accordingly, the motion court did not clearly err in

denying Jones’ claim that he received ineffective assistance from Williams when Williams

failed to investigate Jones’ mental health issues. Jones’ point is denied.

 The order denying Jones’ amended Rule 24.035 motion is affirmed.

JEFFREY W. BATES, J. – OPINION AUTHOR

WILLIAM W. FRANCIS, JR., P.J. – CONCUR

JACK A. L. GOODMAN, J. – CONCUR

 8